WILLIAM KNUDSON et al., Appellants, v. J. O. JACKSON, Appellee.

**MASTER AND SERVANT:** Workmen's Compensation Act—Who is an Employee? An express or implied contract between two parties, under which one is to render a service to the other and the other is to receive such service from the doer, is essential to the creation of the relation of *employee* and *employer*, under the Workmen's Compensation Act. It follows that a workman who is in the general employment of a contractor is not the employee of another person for whom the contractor is doing work.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

## JUNE 25, 1921.

CLAIM under the Workmen's Compensation Act. The industrial commissioner denied the claimant any relief. The district court reversed the action of the commissioner, and from the decisions so rendered, this appeal is prosecuted.—*Reversed.*

*Stipp, Perry, Bannister & Starzinger,* for appellants.

*John L. Gillespie,* for appellee.

FAVILLE, J.—One C. M. Knight is a team contractor in the city of Des Moines. He has been in business as such 5 or 6 years, and hires out teams and drivers to people who desire to have such services rendered. The claimant was employed by Knight as a driver. Knight received $7.00 a day for the use of the driver and team, and he paid the claimant, Jackson, $3.50 a day for his services. Jackson was responsible to Knight for giving the team proper care and attention, and he worked for whomsoever Knight directed him to work. Appellant, Knudson, is a contractor and builder. He made arrangements with Knight to furnish him with a man and team for hauling rubbish in connection with his contractor work on a certain job. Knudson had nothing to do with the selection of the man or the team for the work, and had no knowledge as to whom Knight would

send to do the work.   After Knudson had arranged with Knight to furnish a man and team, Knight ordered appellee, Jackson, to report at the Knudson job at about 7:30 o'clock in the morning.   Jackson had been employed by Knight for about a week at that time.   According to the instructions from Knight, Jackson appeared on the Knudson job, and was put to work by Knudson's foreman in hauling rubbish.   Jackson was so engaged for a period of about two weeks, during which time he received instructions from Knudson's foreman as to the particular work he was to do.   Knight paid Jackson at the end of each week.   Jackson had no knowledge whatever of the arrangements between Knudson and Knight.   While engaged on the Knudson job, Jackson received the injury for which compensation is sought.

The industrial commissioner held that Jackson was in the service of Knight, and that Knudson was not his employer, within the meaning of the Workmen's Compensation Act.   On appeal to the district court, the finding and decision of the industrial commissioner was reversed, and the court held that the claimant was the employee of Knudson, and as such was entitled to compensation from him.

There is no dispute in the facts.   The question in the case is whether or not, under the facts disclosed, the claimant, Jackson, was the employee of Knudson, within the meaning of the Workmen's Compensation Act.   Our statute undertakes to define the terms ''employer'' and ''employee.''

Section 2477-m, Code Supplement, 1913, provides in general terms that an employer, ''as defined by this act,'' shall pay compensation for ''all personal injuries sustained by an employee *arising out of and in the course of the employment.''*

Section 2477-m16 provides:

''(a)   'Employer' includes and applies to any person, firm, association or corporation, and includes state, counties, municipal corporations, cities under special charter and under commission form of government and shall include school districts and the legal representatives of a deceased employer.   Whenever necessary to give effect to Section 7 of this act, it includes a principal or intermediate contractor.

''(b)   'Workman' is used synonymously with 'employee'

and means any person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship for an employer.''

The statute creates rights and liabilities not recognized at common law. It must be construed for the purpose of effectuating the legislative intent. We cannot by judicial construction enlarge upon the express provisions of the statute. The legislature has seen fit to define who is an employee, within the meaning of this act, and one who seeks to avail himself, as an employee, of its provisions must come within the terms of the statute. The statute by its terms refers to an employee as: (1) Any person who has entered the employment of an employer; and (2) any person who works under contract of service, express or implied, for an employer.

In construing another statute in *State v. Foster,* 37 Iowa 404, we considered the definition of the terms ''employer'' and ''employment.'' We said:

''They are not of the technical language of the law or of, any science or pursuit, and must, therefore, be construed according to the context and the approved usage of the language. The words are defined as follows: *Employment*—'the act of employing or using. 2. Occupation; business. 3. Agency or service for another or for the public.' *Employer.* 'One who employs; one who engages or keeps in service.' The verb 'employ' is defined as follows, when used with a human being either as its subject or object: 'To engage in one's service; to use as an agent or substitute in transacting business; to commission and intrust with the management of one's affairs.'—*Webster.*''

As used in this statute, we do not think there is any legal distinction to be recognized between the phrases in Section 2477-m16. A person ''who has entered the employment of an employer'' is ''a person who works under contract of service, express or implied, for an employer.''

''Employment implies a contract on the part of the employer to hire and on the part of the employee to perform service.'' *Malloy v. Board of Education,* 102 Cal. 642 (36 Pac. 948).

In order for a person to come within the terms of this act as an employee, therefore, it is essential that there be a ''con-

tract of service, express or implied,'' with the employer whom it is sought to charge with liability.

In *Pace v. Appanoose County,* 184 Iowa 498, we said:

''It will be observed that the employment or work must be 'under contract of service, express or implied.' ''

Definitions recognized by the common law cannot be invoked where the legislature has, by express enactment, defined the terms employed in the statute. Under the facts of the instant case, was Jackson, the claimant, the employee of Knudson? In other words, did Jackson have ''a contract of service, express or implied,'' with Knudson? If he did, he is entitled to compensation under the act. If he did not have such contract, express or implied, with Knudson, he cannot claim award under this statute.

The Workmen's Compensation Statutes of the various states differ materially in their phraseology, and the construction of similar statutes by the courts of different states has not always been uniform. The statute of the state of New Jersey provides (Section 3, page 23, P. L. 1913, Chapter 174):

''Employer is declared to be synonymous with master and includes natural persons, partnerships and corporations; employee is synonymous with servant and includes all natural persons who perform service for another for financial consideration, exclusive of casual employments.''

Paragraph 7 of said act provides:

''When employer and employee shall by agreement, either express or implied, as hereinafter provided, accept the provisions of Section 2 of this act, compensation shall be made,'' etc.

In *Rongo v. Waddington & Sons,* 87 N. J. L. 395 (94 Atl. 408), the Supreme Court of New Jersey construed this statute, in a case very similar to the case at bar. The petitioner in that action was employed by and worked for the defendants Waddington, and was regularly paid his wages by them as driver of a cart, they being contracting teamsters. Waddington had a contract with Vanderbilt to haul sand and other building material for him at a fixed price per team per day. Several teams of Waddington's were working on the Vanderbilt job. The petitioner worked on said job, and was injured while so employed. The court said:

"We think it would be an unreasonable strain upon this language to hold that it is applicable to any relation of master and servant, as generally understood at the common law, other than that arising out of a contract between the master and the servant, whereby the servant engages to work for the master, and the master on his part engages to pay the servant for such work; in other words, that it is inapplicable to a condition of things where a servant employed by a master directly is required, as part of his contract of employment, to work for some other person for a compensation payable, not to the servant, but to the immediate master. * * * We conclude, therefore, that it was an error on the part of the trial court to hold Vanderbilt as the employer. Vanderbilt had no direct dealings with the petitioner; he had nothing to say on the question how much wages petitioner should be paid; the only contract that he made was a contract with Waddington for the supply of a team, consisting of a wagon, horses, and driver, for which he paid as a team. There was, of course, ample evidence to justify an award as against Waddington, and this is what we think the court ought to have done."

Unless we are to place a different construction upon the statutes of this state than the one adopted by the Supreme Court of New Jersey in construing the statute of that state, this case would apparently be in point. The New Jersey statute, in defining an employee, uses the term "all natural persons who perform service for another for financial consideration;" the Iowa statute provides that an employee is a person who "works under contract of service, express or implied."

In *Clancy's Case*, 228 Mass. 316 (117 N. E. 347), the Supreme Judicial Court of Massachusetts had under consideration the Workmen's Compensation Act of that state. The pertinent provision of said act is as follows:

"This act shall apply to all laborers, workmen, and mechanics in the service of * * * a * * * city * * * under any * * * contract of hire, express or implied, oral or written."

The deceased was a teamster, in charge of horses and cart owned by one McGillicuddy, in whose general employ he was. His duties were to take care of the team and drive it. McGilli-

cuddy sent him to the city yards, to inquire for carting and to do whatever work there was to be done. While engaged in this form of labor, he was injured. He was not on the pay roll of the city, but was paid by McGillicuddy. The city paid McGillicuddy for the services of the team and driver. The court said:

"It is plain that there can be no recovery. The deceased had no contract of any kind with the city. His contract of employment was exclusively with McGillicuddy, who alone was responsible for his wages. This is the plain case where the city hired from another horses, cart, and driver to carry material from one place to another as its servants or officers might direct, the driver being left to deal with the horses in his own way. As was said in *Peach v. Bruno*, 224 Mass. 447 (113 N. E. 279), nothing is better settled, under such circumstances, when nothing more appears, than that, as matter of law, the driver is the servant of the owner of the horses, and not of the one who hires them."

In *Nissen T. & S. Co. v. Miller*, (Ind.) 125 N. E. 652, the Appellate Court of Indiana said:

"For the purposes of the Workmen's Compensation Act, the relation of employer and employee is created in every instance by contract, either express or implied."

These cases illustrate the construction that has been placed on statutes similar to ours, under a like state of facts, by the highest courts of these states.

There is another line of decisions that is pressed upon our attention by the appellee. The Workmen's Compensation Act of New York [Consol. Laws, Ch. 67, Section 3, Subd. 4] defines an employee as "a person who is engaged in a hazardous employment in the service of an employer carrying on or conducting the same upon the premises or at the plant, or in the course of his employment away from the plant of his employer."

The Court of Appeals of New York, in *Dale v. Saunders Bros.*, 218 N. Y. 59 (112 N. E. 571), had under consideration a case in which the firm of Saunders Brothers was the general employer, engaged in the business of teaming, and employed the claimant as the driver of a team and wagon. One Walsh requested Saunders Brothers to furnish a team, wagon, and driver for the purpose of delivering sand to customers of Walsh's, and

Saunders Brothers sent claimant to perform said service. The wages were paid by Saunders Brothers to the claimant, and Walsh paid Saunders Brothers for the service of the man, team, and wagon.

The question involved in the case was whether or not the general employer, Saunders Brothers, was liable for the injury to the claimant, and the court of appeals held that he was so engaged, and that he came under the terms of the statute, as being in the course of his employment away from the plant of his employer.

The question later came before the same court in *DeNoyer v. Cavanaugh,* 221 N. Y. 273 (116 N. E. 992). In that case, DeNoyer was employed by Cavanaugh, as driver of a truck. The Crown Oil Company was engaged in the business of selling oil and gasoline. This company made arrangements with Cavanaugh to furnish a horse and driver for the oil company, and DeNoyer was sent by Cavanaugh to do this work, and while so engaged, was injured. Following the *Dale* case, the court held that Cavanaugh was the general employer, and, under the statute of New York, was liable. The question of the liability of the oil company was not involved.

Appellee lays great stress upon the statement in the opinion of the court as follows:

"Even where no property of the general employer is intrusted to the employee to be used in the special employment, the general employer pays the compensation, may direct the employee when to go to work, and may discharge him for refusal to do the work of the special employer. The industrial commission, therefore, has full power to make an award against the general employer. It does not follow that, by the application of this rule, the special employer is not to be held in any case. The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employee between both of them and himself. If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employees. (*Comerford's Case,* 224 Mass. 571, 573.) Thus, at one and the same time they are generally the employees of the general employer and specially the em-

ployees of the special employer. As they may, under the common law of master and servant, look to the former for their wages and to the latter for damages for negligent injuries, so, under the Workmen's Compensation Law, they may, so far as its provisions are applicable, look to the one or to the other, or to both, for compensation for injuries due to occupational hazards (Workmen's Compensation Law [Consol. Laws, Chapter 67] Section 3, Subds. 3, 4), and the industrial commission may make such an award as the facts in the particular case may justify. Cases like *Gibley v. State,* 89 Conn. 682, and *Rongo v. Waddington & Sons,* 87 N. J. Law, 395, depend upon the special meaning given to the word 'employee,' as defined by the statutes construed, and are inapplicable here.''

It is to be observed that the court did not have before it, in that case, the question of the liability of the special employer.

In *Employers Liab. Assur. Corp. v. Industrial Acc. Com.,* 179 Cal. 432 (177 Pac. 273), the Supreme Court of California considered a case wherein it appeared that a company was engaged in manufacturing cement, and it became necessary to install new machinery. Another company was engaged in this business, and had a number of employees experienced in that line of work. An arrangement was made between the two companies. The cement company entered into a contract with the machine company, whereby the latter was to secure and furnish employees to perform services for the benefit of the cement company. The latter was to furnish material, and have control of the employees. The workman who was injured was employed by. the machine company, and put to work upon the plant of the cement company. The machine company had the power of hiring and discharging him. The question was before the court as to whether, under such circumstances, the special employer was liable. The court said:

''If the question were altogether new, it might be said that the person who enters into the contract of employment, express or implied, with the employee, is at all times to be considered the employer, as it is contended the rule should be. Neither our own decisions nor those of other states have pursued this simple course. The constitutional provisions authorizing the workmen's compensation law of necessity uses the terms 'em-

ployer' and 'employee' (Article XX, Section 21), and it must
follow that, in defining the terms 'employer' and 'employee' in
any statute passed in pursuance thereof, no definition therein
contained can enlarge the scope of the constitutional authority.
So, in determining the question as to whether or not the rela-
tionship of employer and employee exists, we must look to the
general law, as well as to the terms of the statute itself.   *   *   *
As the law recognizes that an employee may at the same time
be under a general and a special employer, it would seem to
follow that the jurisdiction of the commission might well be
predicted on either the general or special employment or both.
*   *   *   The definitions of 'employer' and 'employee' in our
workmen's compensation law (Sections 13, 14) are broad
enough to include both the general and the special employer;
and as such contracts of employment, express and implied, were
recognized before the constitutional amendment, we do not see
why either or both might not give jurisdiction to the industrial
accident commission.''

The foregoing cases represent the two lines of decisions.
Because of the difference between the statutes, the conflict in
these decisions is perhaps more apparent than real.   The stat-
utes of New York and of California differ from the statute in
this state, and ours more nearly conforms to the statutes of New
Jersey and Massachusetts.

We recognize and adhere to the rule that this statute should
be liberally construed.   This, however, does not permit us to
enlarge the express terms of the act.   Our legislature has seen
fit to define who is an employer and who is an employee, within
the meaning of this act.   The legislature has expressly said that
an employee who is entitled to compensation under this act is
''any person who has entered into the employment of or works
under a contract of service, express or implied, for an em-
ployer.''   In view of this definition and declaration by the legis-
lature, we cannot enlarge the terms and provisions of this
statute, and apply to an employer and employee the rules and
definitions of the common law, as applicable to master and serv-
ant.   The legislature, in enacting this statute, was providing a
remedy wholly unknown to the common law, and it saw fit to
place in the statute definitions to which rules of the common

law can have no application. We are, therefore, in an entirely different situation from the Supreme Court of California, in declaring that the definitions of employer and employee, under the Workmen's Compensation Law of that state, "are broad enough to include both the general and special employer." Our legislature has expressly said that an employee, within the meaning of this act, in order to come under this statute, must have a contract of service, express or implied, with the employer who is sought to be charged with liability. This language is clear and explicit. Applying it to the facts of the instant case, there was no contract of service, express or implied, between the claimant, Jackson, and the so-called "special employer," Knudson. There was a contract of service between the claimant and his "general employer," Knight. He had no contract of service, express or implied, with any other person than Knight. He had no such contract of service whatever with Knudson. In a sense, Knudson was no more than an agent for Knight, directing Jackson as to the particular work he was to do; but there was no pretense of a contract, express or implied, between Jackson and Knudson.

It is insisted that the cases cited from New York and California are directly in point and are controlling. We do not regard them as being directly in point, because of the difference between the statutes of those states and that of our state; but if they were to be so regarded, we should not be inclined to follow them.

We are of the opinion that, under the facts of this case, there was no contract of service, express or implied, between the appellee and the appellant, and that the appellee was not entitled to compensation as against the appellant, under the terms and provisions of the Workmen's Compensation Act. No question of liability of Knight to the appellee is involved in this appeal. The finding and decision of the industrial commissioner were correct. The district court was in error, and the judgment must be reversed.

In view of our holding on the foregoing matters, it is unnecessary for us to discuss other questions argued.—*Reversed.*

All the justices concur.