## JOHN F. WANDERS'S CASE.

Suffolk.          January 6, 1941. — January 27, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Workmen's Compensation Act*, To whom act applies, What insurer liable. *Agency*, What constitutes. *Contract*, Of employment. *Evidence*, Competency, Relevancy.

A decision by the Industrial Accident Board was warranted that a workman had no contract of hire with a general contractor under an arrangement between the general contractor and a subcontractor, undertaken "to obviate" certain Federal regulations, under which arrangement the workman, while installing material furnished by the subcontractor, was placed on the general contractor's pay roll and was paid in the first instance by the general contractor and the amount so paid was deducted from the contract price for the materials; and reimbursement of the general contractor's insurer for compensation it paid the workman after he was injured while so working was required of the subcontractor's insurer under § 15A of the workmen's compensation act.

Unlawfulness and unenforceability of an arrangement between a contractor and a subcontractor, under which the contractor paid the wages of a workman and was afterwards credited by the subcontractor for the amount so paid, did not require that the existence of the arrangement should not be considered in determining whether the workman was an employee of the contractor within the workmen's compensation act.

An unlawful purpose of an arrangement between a contractor and a subcontractor respecting payment of a workman, in which their respective insurers under the workmen's compensation act did not

participate, would be no defence to a proceeding under § 15A of the act whereby the insurer of the contractor sought reimbursement from the insurer of the subcontractor for compensation paid the workman.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board that the insurer of a subcontractor should reimburse the insurer of the general contractor under § 15A of the workmen's compensation act.

A decree was entered by order of *Buttrick*, J., in accordance with the decision of the board. The subcontractor appealed.

The case was submitted on briefs.

*J. F. Scannell & E. E. Andrews*, for Lumbermens Mutual Casualty Company, insurer of Metal Clad Doors, Inc.

*M. J. Aldrich & E. B. Cass*, for Liberty Mutual Insurance Company, insurer of E. C. Blanchard Co., Inc.

RONAN, J. The question in this case is whether the employee at the time of his injury on July 14, 1939, was in the employment of E. C. Blanchard Co., Inc., hereafter referred to as Blanchard, or in the employment of Metal Clad Doors, Inc., hereafter referred to as the metal company. The insurer of Blanchard paid compensation to the employee, and in this proceeding under G. L. (Ter. Ed.) c. 152, § 15A, seeks reimbursement from the insurer of the metal company. The reviewing board found that Blanchard was a general contractor engaged in the erection of a schoolhouse for the city of Lynn. Part of the funds for this project were supplied by the Federal government through an agency known as the Public Works Administration, which exercised some control over the execution of Blanchard's contract with the city for the purpose of seeing that Blanchard complied with certain Federal laws and regulations, including those requiring that each contractor and subcontractor shall be certified by this Federal board before doing any work upon the contract. Blanchard's contract with the city required it (Blanchard) to furnish and install three fire doors. On January 16, 1939, Blanchard wrote the metal company, accepting its quotation of $80 for furnishing and delivering the doors at the school together with the necessary hardware except locks, and stating that, at

the option of Blanchard, the metal company would install the doors for the sum of $25. The letter then continued: "Should you erect it is agreed you will allow the transfer of your erection mechanic to our payroll and the total cost of his wages plus insurance is to be deducted from the contract price." The metal company formally accepted the contract set forth in this letter. Under date of July 3, 1939, Blanchard notified the metal company that "measurements may be taken and doors and hardware installed . . . at once." Wanders had been regularly employed by the metal company but he was not working just prior to the date of his injury. He received instructions from the metal company to report at the school for the purpose of erecting the doors. While doing this work he was injured. After Wanders completed the day's work, the superintendent of Blanchard was given the social security number of Wanders and the latter was paid by check of Blanchard after the amount of the social security tax had been deducted. Later, the metal company billed Blanchard for $105, which comprised $80 for the doors and $25 for their installation. Blanchard deducted ten per cent from this bill, which it was customary to retain for a certain period, and also deducted the payments made to Wanders and to another man who was working with him. No deduction was made for insurance as its amount was not then known to Blanchard, which intended to deduct it from the retained percentage when the amount of this insurance was ascertained. The board further found that Wanders had not been hired by or lent to Blanchard; that Blanchard had no right to exercise and did not exercise any control over him; that Wanders was an employee of the metal company and that his name appeared upon the payroll of Blanchard simply as a device "to obviate P. W. A. regulations." The board ordered the insurer of the metal company to reimburse the insurer of Blanchard. The insurer of the metal company appealed from a decree of the Superior Court entered in accordance with the decision of the reviewing board.

There was testimony that Callbeck, the president of the

metal company, sent two of its employees to the school-house to erect the doors, and that whichever one he talked with he told to report to Blanchard "and work for them on the fourteenth of July on their payroll"; but he also testified that he sent these two men in conformity to the written contract of January 16, 1939, between the metal company and Blanchard. There was testimony that when Wanders arrived at the schoolhouse he saw Galvin, Blanchard's superintendent, whom Wanders told that he and his companion were to work for Blanchard and were to be paid by Blanchard, and that Galvin then showed them where the doors and hardware were. Galvin testified that he did not supervise the installation of the doors and that he did not care how long it took to do the work as long as it was properly done.

Evidence showing to whom a person owed obedience in the performance of the details of his work may be material in showing the relationship between them, yet it is settled that under the workmen's compensation law there must be a contract of service, either express or implied, before one can be considered as an employee of another. *Cameron* v. *State Theatre Co.* 256 Mass. 466. *McDermott's Case*, 283 Mass. 74. *Donnelly's Case*, 304 Mass. 514. *Scordis's Case*, 305 Mass. 94. The fact that Wanders was paid by Blanchard is some evidence that he was its employee but it loses some of the effect it otherwise might have because such payment was made in accordance with an arrangement between Blanchard and the metal company by which Blanchard was to be credited with the amount paid, and in the light of the further finding of the board that one of the purposes for which this method of payment was adopted was to circumvent certain Federal regulations. *McAllister's Case*, 229 Mass. 193. *Chisholm's Case*, 238 Mass. 412. *Peck's Case*, 250 Mass. 261. *Commonwealth* v. *Weinfield's Inc.* 305 Mass. 108. Whether Wanders had been hired by Blanchard or lent to the latter by the metal company or continued as an employee of the company in installing the fire doors was, upon all the evidence, a question of fact for the determination of the board. The finding of the board

that the employee had no contract of service with Blanchard is supported by the evidence and cannot be set aside, *Emack's Case*, 232 Mass. 596; *Hogan's Case*, 236 Mass. 241; *Mahoney* v. *New York, New Haven & Hartford Railroad*, 240 Mass. 8; *Cooper's Case*, 271 Mass. 38; *Rich's Case*, 301 Mass. 545, even though upon all the evidence a contrary conclusion might reasonably be reached. *Chisholm's Case*, 238 Mass. 412. *Beckford's Case*, 268 Mass. 221. *Hill's Case*, 268 Mass. 491. *Shute's Case*, 290 Mass. 393.

The appellant contends that the finding of the board, that putting Wanders on the Blanchard payroll "was simply a device to obviate P. W. A. regulations," was a finding that the contract between Blanchard and the metal company was violative of these regulations and that the contract ought not to be given effect by this court. None of these regulations appears in the record. The evidence tended to show that there was a regulation forbidding the subletting of a contract without the consent of a Federal administrative board, and that it was for the purpose of avoiding this regulation that Blanchard put the employee upon its payroll and paid him upon the completion of his work. We assume in favor of the appellant that this contention is open. *Sullivan* v. *Crowley*, 307 Mass. 189. *Finlay* v. *Eastern Racing Association, Inc., ante*, 20. Even if the contract of subletting was not enforceable between Blanchard and the metal company, the existence of such a contract could be considered in determining the improbability of Blanchard's making any contract of hire with Wanders and may have furnished an explanation of the payment of wages to him by Blanchard. The issue before the reviewing board was not the enforcement of any contract between Blanchard and the metal company but the issue was, which of these two was the employer of Wanders at the time he was injured. The validity of the contract was collateral to this issue, and if it were void that would not be a defence in this proceeding between two insurers, neither of which was a party to this contract. It was open to them to show the relation of Wanders to both Blanchard and the metal company, *Guaranty Security Corp.*

v. *Eastern Steamship Co.* 241 Mass. 120; *Tripp* v. *National Shawmut Bank of Boston,* 263 Mass. 505; *Commonwealth* v. *Weinfield's Inc.* 305 Mass. 108, and we perceive nothing that required a ruling that the claim of the appellee for reimbursement was tainted with illegality. *Rogers* v. *Abbott,* 248 Mass. 220. *Palefsky* v. *Connor,* 270 Mass. 410. *Cook* v. *Cole,* 273 Mass. 557.

<div align="right">

*Decree affirmed.*